STEPHEN COBURN, *Appellant from decree of the Judge of Probate, versus* GEORGE LOOMIS, *Administrator.*

On▸the final settlement of an account in the Probate Court, former settlements may be opened, for the purpose of rectifying mistakes.

Where a mistake is made in the settlement of such an account, the course is to apply by petition to the Judge of Probate for its correction, or to state the amount claimed in a new account; unless, when the mistake is discovered, the party has a right of appeal to the Supreme Court.

But where an alleged mistake has been discovered, and the party has petitioned the Judge of Probate for its correction, and, upon a hearing, the Judge has decided that no mistake has been made, and no appeal is taken from his decree, the party is concluded thereby, and cannot again try the question.

ON REPORT.

THE facts are fully stated in the opinion of the Court.

*J. S. Abbott*, for the appellant.

*Hutchinson*, for the appellee.

An error in a Probate account may be corrected in the settlement of any subsequent account. *Stetson* v. *Bass*, 9 Pick., 27 ; *Davis* v. *Cowdin*, 20 Pick., 510 ; *Longley* v. *Hall*, 11 Pick., 120 ; *Sturtevant* v. *Tallman*, 27 Maine, 78.

The opinion of the Court was drawn up by

CUTTING, J. — Without repeating what has been reported in *Knight and wife* v. *Loomis*, 30 Maine, 204, we will at once proceed to a consideration of the legal rights of the present parties as disclosed by subsequent transactions. In that case it was decided, that an administrator, with the will annexed, does not succeed to the rights and duties of an original executor, appointed trustee by the will. And the present appellee, who was defendant in that suit, brought by a legatee, prevailed, upon the ground that none but a legal trustee could reach the legacy in his hands; for, say the Court—"If a trustee, duly appointed to take charge of the sum bequeathed to *Samuel Weston*, should call upon the defendant as administrator for the money now in his hands,

and it should appear, by the will and the condition of the affairs of the estate, to be subject to such a call, his duty would require the payment."

Since that decision, the present appellant has been duly appointed such trustee, who now calls for and demands of the appellee the money which, in the former case, was shown to be in his hands as the successor of the executor; for, again, said the Court, in the case before cited, — "By extracts from the probate records, it appears that, in February, 1840, the defendant filed his account in the probate office, in which he charged himself with the sum of $1700, out of which the money that was subsequently in his hands arose."

But since that time, the appellee, possessed of the instinct of a special pleader in the matter of "confessing and avoiding," pretends, and has induced the Probate Court to believe, that no such fund has ever come into his hands. This is denied by the appellant, and thus is presented an issue of fact, to determine which, we must look into the history of this whole transaction, or at least, so much of it as has been disclosed since the former opinion.

It appears that one *Benoice Johnson*, on July 5, 1831, by his will of that date, among other legacies, bequeathed to *Samuel Weston*, the executor, the sum of seventeen hundred dollars — "in trust always — and it shall be the duty of said *Weston* to let out upon interest the said sum of seventeen hundred dollars upon good security, and it shall also be his duty to collect the interest on said sum and to pay the same to my beloved wife Charlotte (the present *cestui que trust*) yearly," &c., and, after her decease, one-half of the principal to the heirs of *Sally Tuttle*, wife of *James Tuttle*, and the other half to the heirs of *George Loomis* (the present appellee.) The testator soon afterwards died, and his will was duly approved on February 7, 1832, and the administration of the estate duly committed to *Samuel Weston*, the executor named in the will, who, on the same day, filed his statute bond in the probate office, with *George Loomis* (the appellee) and one *Benoice Tuttle* his sureties therein. Wes-

ton, after having received the seventeen hundred dollars into his possession, as we have a right to infer, died intestate, as it is said, and subsequently, on Dec. 3d, 1839, the appellee was duly appointed administrator of *Benoice Johnson* with the will annexed, who, in February, 1840, filed in the probate office the following document, viz. ; — *George Loomis*, administrator *de bonis non,* on the estate of *Benoice Johnson,* late of Cornville, deceased, charges himself with the following, viz. : —

"To received of the administrator on the estate of the executor of the last will and testament of said *Johnson,* $1700," which, on the third day of March following, was received by the Probate Judge, "ordered to be put on file and recorded," and so remained as a matter of record, undisturbed until 1846, when the appellee filed his petition to the Probate Court, representing — "That said charge was made to himself as administrator, as aforesaid, through misapprehension or mistake, that in fact said sum of seventeen hundred dollars never came into his hands, to be administered. Wherefore he prays your Honor, that the mistake above mentioned may be corrected." Upon which petition, after due notice to the present *cestui que trust,* and her appearance and a full hearing thereon, it was adjudged by the Court, at an adjourned term, held in March, 1848, "that said petition be denied, and that said Charlotte (the *cestui que trust*) and Henry (her present husband) recover against the said Loomis (the present appellee) their costs, taxed at eight dollars and seventy-five cents, and that execution issue therefor agreeable to the statute in such cases provided."

Upon the foregoing record, *Loomis* (the present appellee) rested apparently satisfied and contented, or at least dormant, until action on the part of the *cestui que trust,* the widow of the testator, who, not having received her annual interest, according to the special bequest of her former husband, cited the appellee to appear before the Probate Court and settle his administration account. He did so appear, and claimed the same deduction, and for the same cause, as

before stated. Whereupon it appears, from the probate records, that "the parties having been fully heard, and the said account having been fully investigated by Court, it is ordered, decreed and adjudged by the Court, that the first item, being seventeen hundred dollars, in said account, claimed by said Loomis, be disallowed, and that he stand charged with the same—diminishing the credit and increasing the charge against him by that sum, so that said Loomis, as administrator aforesaid, is found chargeable, and is hereby charged with the sum of $1786,03, and is allowed $216,50, leaving in his hands, as administrator, $1569,53, besides the interest on said $1700, upon which item (viz., interest,) no adjudication is had."

The next development, in the order of time, is the action of the *cestui que trust* and her husband, in her right, against the present appellee for her annual instalment, it being for the amount of the interest on the sum of $1700, which, before that time, was determined and adjudged by two solemn decisions of the Probate Court to be in the hands of the appellee. The result of that case, (*Knight* v. *Loomis*,) and the reasons therefor, have already been alluded to and explained. Such was the situation of the parties, as apparent by the records, both of the Probate and of this Court, in 1849, when that opinion was delivered, to wit, the funds were in the hands of the appellee, but no trustee was in Court authorized to call them out. But now, in the present process, such a trustee does appear, when the appellee attempts for the *third* time to present to the Probate Court an issue, which, on the two former occasions in the same Court, has been settled against him, and, if the decree from which the present appeal has been taken be correct, he has been successful.

It cannot be controverted, that, on a final settlement of an administrator's account in the Probate Court, former settlements may be opened for the purpose of rectifying mistakes, whether originating in fraud practised on the Court,

or through a misapprehension of a true state of facts by the parties. But the present process embraces no such elements. The final settlement, in fact, was perfected in March, 1848, when nothing remained for the administrator to do, except to pay over to the persons authorized to receive it, the balance then found to be due, of $1569,53, the receipt of which sum, filed in the Probate Court, would have balanced his account. It is true, that the appellee in his petition calls the present process his "second account." But how is it variant from the former? Only in this, he charges, "To paid printer on this acc't, $1,25. To travel and attendance at this Court, $3,00. For this acc't, ,50, and the allowance of the $1700, which was never received by him." The old claim again presented in December, 1857, some nine years after the former decree, with the addition of an anticipated sum of a few dollars, for his current expenses in presenting his petition. He virtually brings before the Court the same subject matter which has twice before been adjudicated upon by the Court, and no appeal taken, under the pretence of fraud or mistake, when, if such pretence was well founded, it was as well known to him in 1848 as in 1857. The true doctrine upon this point is well settled in one of the cases cited by the appellee's counsel, *Stetson* v. *Bass*, 9 Pick., 27, in which the Court say—"In that Court, (Probate Court,) when a mistake is made in a settlement of an account, the course is to apply to the Judge of Probate for the correction of the mistake, by petition, or to state the amount claimed in a new account; unless, when the mistake is discovered, the party has a right of appeal, by which it may be corrected in this Court." And the question may here be asked of the appellee, whether in 1857, when his present petition was presented, a mistake was any more discovered than in 1848, when, upon the same issue, the decree was against him. All the records and proceedings show that the answer must be in the negative, consequently the decree appealed from was erroneous.

But suppose we consider the case as *res non adjudicata*, and revert to the situation of the parties in February, 1840, when the appellee, having been appointed administrator, charged himself with the $1700, as so much money received of the executor. This is done out of respect for, and in justification of the then Judge of Probate, whose official conduct has been adverted to with some degree of censure in advising or permitting the appellee to file and have his account recorded.

We have seen that the appellee was one of Samuel Weston, the executor's, sureties on his official bond; that one half of the legacy, after the decease of the widow, was to revert to this surety's heirs; and that Weston had received the amount in controversy, as such executor, to be accounted for, either as executor or trustee under the provisions of the will. He accepted the trust as executor, but not as trustee, by reason of not procuring the bond specified in the will. He then held the estate as *executor* only, subject to the call of a legal trustee; and for whose default to respond to such call, his sureties were clearly answerable. He subsequently dies, and, perhaps insolvent; but, if so, such fact does not exonerate his bondsmen from their liability. Under such circumstances his surety (the present appellee) is appointed administrator *de bonis non*, with the will annexed; thereby, as a representative of the fund in the hands of his principal on the official bond, he becomes enabled to delay any action thereon. Consequently it was the duty of the Probate Judge to inform him that he must either credit in his account the amount of his legal liability to the legatees, or resign his trust, in order that he might, by some disinterested administrator, be called to answer for his suretiship. And he, at that time, with a full knowledge of all such facts, charged himself with liabilities without suit, which might have been recovered of him on suit. That such was the fact is further apparent from his subsequent conduct in his and his co-surety's filing their claim against

the estate of Weston, as his sureties, and receiving, as such, a dividend.

*The decree of the Probate Court is reversed, with costs to appellant. And the appellee is to stand charged for the sum of fifteen hundred and sixty-nine dollars and fifty-three cents.*

TENNEY, C. J., RICE, GOODENOW and DAVIS, JJ., concurred.